**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laron, Incorporated, an Arizona corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Construction Resource Services, LLC, a Nevada limited liability corporation; BRYCOB Enterprises, Inc., a Nevada corporation; David B. Taylor, Jr. aka David B. Taylor and Dave Taylor and Susan A. Taylor aka Angie Taylor, husband and wife; William R. Long aka Bill Long and Angela D. Long, husband and wife; Scott R. Snoddy and Stephanie M. Snoddy, husband and wife; and Simon White,<br><br>　　　　Defendant. | No. CV-07-0151-PCT-NVW<br><br>**ORDER** |

Pending before the court are Defendant Simon White's Motion to Dismiss Pursuant to Fed. R. Civ. P. Rules 9(b) & 12(b)(6) (Doc. # 71) and the remaining Defendants' Joinder in Defendant Simon White's Motion to Dismiss Pursuant to Fed. R. Civ. P. Rules 9(b) & 12(b)(6) (Doc. # 77).

**I.　Background**

Plaintiff Laron, Inc. ("Laron"), is a machining company that provides equipment fabrication and repair services to companies in the mining and energy industries. Defendants

1  Construction Resource Services, LLC ("CRS"), and BRYCOB Enterprises, Inc.
2  ("BRYCOB"), are Nevada corporations formed by Defendants Susan Taylor and David B.
3  Taylor in November 2002.  David Taylor and Defendants Scott R. Snoddy and William R.
4  Long were employees at Laron until approximately January 2007.  Defendant Simon White
5  was an independent contractor of Siemens Power Generation, Inc.  Laron's Complaint refers
6  to CRS, BRYCOB, the Taylors, Snoddy, Long, and White collectively as the "CRS
7  Defendants."

8        The Complaint alleges that CRS created and submitted to Laron multiple fraudulent
9  invoices for services and materials that CRS never in fact provided.  Eleven of these invoices
10 pertained to what is identified as the "Siemens Harquahala Valley Project."  Six of the eleven
11 totaled $26,086.92 and were submitted by CRS on December 6, 2002, for "ultra sonic
12 inspection[s]" performed on three steam turbine nozzles and three steam turbine valves as
13 "requested by Simon White, Siemens Westinghouse."  Doc. # 1, Exh. 1-6.  CRS
14 subsequently submitted two invoices totaling $34,782.60 on February 7, 2003, and three
15 invoices cumulatively charging $146,521.73 on April 25, 2003.  The February 7 invoices
16 purportedly resulted from "janitorial and general labor" services provided by CRS to
17 Siemens at prices "quoted to Simon White."  *Id.* at Exh. 7-8.  The April 25 invoices similarly
18 reflected "supplemental general labor support and materials" supplied to Siemens "per
19 arrangement with Simon White."  *Id.* at Exh. 9-12.

20       Each of the documents was allegedly sent from Nevada to Laron in Arizona by means
21 of United States mail.  Laron paid in full by sending checks back to CRS via United States
22 mail on December 20, 2002, March 17, 2003, and June 13, 2003.  The Complaint alleges on
23 information and belief that the invoices for the Harquahala Valley Project (collectively, the
24 "Siemens Invoices") were "created by or for CRS, and submitted to Laron, with the
25 knowledge, assistance and approval of CRS, BRYCOB, the Taylors, and White."  Doc. # 1
26 at 4.

27       The Complaint also alleges that Long fraudulently requested payment of $500 on
28 December 29, 2004 (the "Pay Request"), for rental equipment that was never in fact provided

1 by CRS. Laron sent payment in the form of a check by United States mail to CRS in Nevada 2 on December 29, 2004. On information and belief, Laron alleges that the Fraudulent Pay 3 Request was "made for CRS, and submitted to Laron, with the knowledge, assistance and 4 approval of CRS, BRYCOB, the Taylors, Snoddy, and Long." Doc. #1 at 7.

5 Finally, CRS allegedly submitted seven more fraudulent invoices (the "Additional 6 Invoices") in connection with other projects several years later. The first, for $2,865, was 7 submitted on December 21, 2005, and paid by Laron on January 12, 2006, as compensation 8 for "hyrdoblast service for caustic affects." *Id.* at Exh. 15. The second, for $5,550, was 9 submitted by Laron on February 21, 2006, and paid on March 1, 2006, as compensation for 10 "VAC truck service exhaust and discharge of turbine[s]." *Id.* at Exh. 16. Invoices dated 11 April 17, 2006, and May 1, 2006, respectively charged $2,400 and $8,900 and were paid on 12 April 21, 2006, and May 4, 2006, for "VAC truck service[s]." *Id.* at Exh. 17-18. Still 13 another was submitted on July 17, 2006, for $3,500 and was paid on July 31, 2006, in 14 connection with a "VAC truck service for the removal" and transportation of "brine solids." 15 *Id.* at Exh. 19. The final invoice for which Laron paid was submitted on November 30, 2006, 16 for $4,350 and also reflected "VAC truck services." *Id.* at Exh. 20. CRS sent one more 17 invoice of $2,865 for a "hydroblast ball mill gear-clean out" on December 18, 2006, but 18 Laron did not remit payment. *Id.* at Exh. 21.

19 With the exception of the December 18 invoice, which was sent by fax, the Additional 20 Invoices were also allegedly delivered by United States mail from Nevada to Arizona. 21 According to the Complaint, "Laron is informed and believes that the Additional Invoices 22 were created by or for CRS, and submitted to Laron, with the knowledge, assistance and 23 approval of CRS, BRYCOB, the Taylors, and Snoddy." Doc. # 1 at 6. "Laron also is 24 informed and believes that the [invoice dated July 17, 2006,] was created by or for CRS, and 25 submitted to Laron, with the knowledge and assistance of Long." *Id.* Laron first found out 26 that the invoices and pay requests dated between December 2002 and December 2006 were 27 fraudulent on January 9, 2007, and now "believes that BRYCOB, the Taylors, Snoddy, Long, 28

1  and White accepted money from or through CRS that CRS obtained from Laron" as a result
2  of the fraudulent invoices, a sum totaling $245,456.25.  Doc. # 1 at 7-8.

3  On these facts, and alleging that the CRS Defendants knowingly used the United
4  States mail and a wire communication in interstate commerce to perpetrate a fraud and that
5  the CRS Defendants possessed the specific intent to defraud Laron and its customers, Count
6  I seeks compensatory and treble damages against CRS, BRYCOB, the Taylors, White,
7  Snoddy, and Long for violations of the Racketeer Influenced Corrupt Organizations Act, 18
8  U.S.C. § 1962(c) and (d).  Count II seeks a declaration that Laron possesses set-off and
9  recoupment rights with respect to any wages allegedly owed by Laron to Snoddy and Long
10 for services they once performed as Laron's employees, and that Taylor, Snoddy, and Long
11 are required to forfeit any compensation received from Laron while they were in breach of
12 their employee duties of loyalty.  Count III alleges that the CRS Defendants committed theft
13 in violation of A.R.S. § 13-1802, participated in a criminal syndicate in violation of A.R.S.
14 § 13-2308, and violated A.R.S. § 13-2310 by knowingly obtaining benefits from Laron by
15 means of false or fraudulent pretenses and representations.  Counts IV through X seek
16 damages for common law fraud, unjust enrichment, and conversion, in addition to restitution,
17 the imposition of a constructive trust over monies that Defendants received from Laron,
18 garnishment, replevin, and injunctive relief.

19 Defendant White now moves to dismiss the Complaint pursuant to Federal Rules of
20 Civil Procedure 9(b) and 12(b)(6) on the grounds that Plaintiff has failed to plead fraud with
21 sufficient particularity and failed to plea a "pattern" of racketeering activity in satisfaction
22 of 18 U.S.C. § 1962(c).  The remaining defendants, who have already answered the
23 Complaint, seek to join White's motion.

26 **II.   Standard of Review**
27 A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be
28 granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support

1    of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th
2    Cir. 1994) (citations and internal quotation marks omitted).  When analyzing a complaint for
3    failure to state a claim, all factual allegations are taken as true and construed in the light most
4    favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504
5    (9th Cir. 1994).  If a complaint is dismissed, "leave to amend should be granted unless the
6    court determines that the allegation of other facts consistent with the challenged pleading
7    could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
8    806 F.2d 1393, 1401 (9th Cir. 1986) (citations omitted).

9    **III.    White's Motion to Dismiss Will Be Granted**

10       **A.    Laron Has Not Alleged a "Pattern" of Racketeering Activity**

11       Whether Laron stated a claim for civil liability under RICO hinges on whether the
12   Complaint sufficiently alleges a "pattern" of racketeering activity under 18 U.S.C. § 1962(c).
13   The statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  There must be "at least two acts of racketeering activity" within ten years of one another in order to constitute a "pattern."  18 U.S.C. § 1961(5).  "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are [1] related and [2] . . . 'amount to or pose a threat of continued criminal activity.'" *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  The first requirement of relationship is satisfied if the alleged acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Northwestern Bell Tel. Co.*, 492 U.S. at 240.  The second requirement is satisfied by allegations of either closed- or open-ended continuity.  Closed-ended continuity exists when there is "a series of related predicates extending over a substantial period of time." *Id.* at

- 5 -

1  241-42. Open-ended continuity, by contrast, requires "past conduct that by its nature projects
2  into the future with a threat of repetition." *Id.*

3  Plaintiff has sufficiently alleged a relationship between the predicate acts of
4  racketeering with which White was involved. Indeed, the acts are virtually indistinguishable.
5  Each of the eleven Siemens Invoices reflected services requested by White and provided by
6  CRS in connection with the Harquahala Valley Project. The common purpose and result of
7  submitting the invoices was to extract payments from Laron without providing any
8  correspondent service to the company.

9  Plaintiff has not, however, sufficiently alleged continuity between White's predicate
10 acts. Open-ended continuity is absent because it does not appear from the face of the
11 Complaint and the attached exhibits that White's past conduct "by its nature projects into the
12 future with a threat of repetition." *Northwestern Bell Tel. Co.*, 492 U.S. at 242. It is not
13 alleged, for example, that White continues to do business with or even remain in contact with
14 CRS or the other Defendants. Nor is there any indication that White retains an independent
15 interest in repeating predicate acts similar to those perpetrated in the days of the Harquahala
16 Valley Project. The absence of allegations that White was involved in the submission of the
17 Pay Request in December 2004, the Additional Invoices in 2006, or any other comparable
18 documents over the past four years also suggests that there is no threat of repetition.

19 Closed-ended continuity is similarly absent. The Complaint's only allegations of
20 fraudulent conduct by White pertain to a period of approximately four and a half months
21 between December 2002 and April 2003. "A pattern of activity lasting only a few months
22 does not reflect the long term criminal conduct to which RICO was intended to apply."
23 *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367 (9th Cir. 1992) (internal quotation
24 marks omitted) (holding that a period of six months was not "substantial" enough to establish
25 closed-ended continuity); *see also Lifeflite Med. Air. Transp., Inc. v. Native Am. Air Servs.,*
26 *Inc.*, 198 Ariz. 149, 151, 7 P.3d 158, 160 (Ct. App. 2000) (interpreting Arizona's RICO
27 statute in light of the requirements for federal RICO). The Ninth Circuit has suggested that
28

1  predicate conduct must at least cover a period of one year to sustain a RICO claim.
2  *Wollersheim*, 971 F.2d at 367.

3  While not independently dispositive, Laron's apparent status as the sole victim of
4  White's alleged misconduct supports the conclusion that a "pattern" of racketeering activity
5  has not been alleged. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992);
6  *Medallion Television Enters.*, 833 F.2d 1360, 1363-64 (9th Cir. 1988); *Cal. Architectural*
7  *Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 (9th Cir. 1987).  It
8  appears from the Complaint that Laron was victimized by White, but there is no additional
9  allegation that Siemens or any other entity was also a victim of his conduct.  Without the
10 benefit of any allegations about the precise nature of the relationship between CRS, Laron,
11 and Siemens, it even appears that Laron and Siemens cannot both be victims at the same
12 time.  Seemingly implicit in the current allegation that Laron shouldered the cost of the
13 fraudulent invoices is the corollary that Siemens did not shoulder that cost.

### B. Laron Has Not Alleged Fraud With Sufficient Particularity

15 "Where the predicate racketeering acts of a RICO claim sound in fraud, . . . the
16 pleading of those predicate acts must satisfy the particularity requirement of [Federal Rule
17 of Civil Procedure] 9(b)," *Wasserman v. Maimonides Med. Ctr.*, 970 F. Supp. 183, 187
18 (E.D.N.Y. 1997), which provides that in "all averments of fraud or mistake, the
19 circumstances constituting the fraud or mistake shall be stated with particularity."  The
20 requirement of particularity mandates that a plaintiff "state the time, place, and specific
21 content of the false representations as well as the identifies of the parties to the
22 misrepresentation." *Odom v. Microsoft Corp.*, 2007 WL 1297249, at *12 (9th Cir. 2007).
23 "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum,
24 identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*,
25 476 F.3d 756, 765 (9th Cir. 2007). Allegations made on "information and belief" are not
26 sufficient "unless the complaint sets forth the facts on which the belief is founded." *In re*
27 *Worlds of Wonder Secs. Litigation*, 694 F. Supp. 1427, 1432-33 (N.D. Cal. 1988).

28

1    White's motion under Rule 9(b) is persuasive. First, while the Complaint successfully
2    provides the context and general nature of the fraud by alleging that it involved the
3    submission of eleven false invoices in connection with the Harquahala Valley Project
4    between December 2002 and April 2003, White's individual role in the fraud is unclear.
5    Laron alleges that the invoices were "created by or for CRS, and submitted to Laron, with
6    the knowledge, assistance and approval of CRS, BRYCOB, the Taylors, and White." Doc.
7    # 1 at 5.  Rule 9(b), however, "does not allow a complaint to merely lump multiple
8    defendants together" in this fashion. *Swartz*, 476 F.3d at 764. Laron must "differentiate [its]
9    allegations . . . and inform each defendant separately of the allegations surrounding his
10   alleged participation in the fraud." *Id.* at 764-65.

11   Plaintiff argues that the invoices attached to the Complaint identify White's individual
12   role by indicating that he requested various janitorial and labor services from CRS on behalf
13   of Siemens for the Harquahala Valley Project. However, the connection between the
14   references to White in the invoices and the broader fraudulent scheme is not self-evident, and
15   the Complaint contains no allegations explaining how those references elucidate White's
16   role. Rule 9(b) "does not require . . . the pleading of detailed evidentiary matter[s]," *Walling*
17   *v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973), but it does require allegations of what
18   White did independent of the other Defendants to help perpetrate the fraud. Plaintiff has not
19   satisfied this requirement; the Complaint and accompanying exhibits simply leave too much
20   guesswork to provide sufficient notice for the purposes of Rule 9(b).

21   Second, the Complaint does not comply with Rule 9(b) because it makes allegations
22   on information and belief without "set[ting] forth the facts on which the belief is founded."
23   *In re Worlds of Wonder Secs. Litigation*, 694 F. Supp. at 1432-33. On information and
24   belief, Laron alleges both that the Siemens Invoices "were created by or for CRS, and
25   submitted to Laron, with the knowledge, assistance and approval of CRS, BRYCOB, the
26   Taylors, and White," Doc. # 1 at 5, and that "BRYCOB, the Taylors, Snoddy, Long, and
27   White accepted money from or through CRS that CRS obtained from Laron as a result of the
28   Scheme," *id.* at 7-8. The basis for the beliefs underlying these allegations is not identified.

- 8 -

1   For these reasons, the Motion to Dismiss will be granted with respect to White under
2 both Rule 12(b)(6) and Rule 9(b). The Motion will be granted without prejudice, however,
3 because Plaintiff can possibly cure the deficiencies in the Complaint. *Schreiber Distrib. Co.*,
4 806 F.2d at 1401.

## IV.   The Motion to Join White's Motion to Dismiss Will Be Denied

The remaining issue is whether Defendants CRS, BRYCOB, David Taylor, Susan Taylor, Scott Snoddy, Stephanie Snoddy, William Long, and Angela Long should be allowed to join White's motion to dismiss. Plaintiff objects on the ground that joinder would violate Rule 12 because the joining Defendants have already filed an answer to the Complaint. Plaintiff further contends that it is disingenuous for Defendants to join the motion under Rule 9(b) after they have filed an answer because the Rule 9(b) motion rests on the argument that the Complaint's allegations of fraud are not specific enough to provide fair notice, and the filing of the answer itself demonstrates that the Complaint was sufficiently specific to apprise the defendants of the claims against them.

The proposed joinder will be denied. "A Rule 12(b)(6) motion must be made *before* the responsive pleading." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (emphasis in original). Because the joining Defendants answered the Complaint nearly two months before the filing of the Motion to Dismiss, they may no longer argue that the Complaint is deficient under Rule 12(b)(6).

The Motion to Dismiss could still be converted to one under Rule 12(c) with respect to the joining Defendants, *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980), but that would not do Defendants any good. The substance of White's motion provides no reason to believe that White or any other Defendant is entitled to a favorable judgment on the merits of the case, as opposed to a determination that the Complaint presently does not state a claim. A Rule 12(c) motion cannot be granted in such circumstances. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1369 (3d ed. 2004).

- 9 -

1   Nor will the court permit joinder to White's motion under Rule 9(b). No Defendant
2 other than White has favored the court with any specific argument pertaining the sufficiency
3 of the allegations. White's own motion focuses only on the allegations made against him.
4 The court will not scan for deficiencies in the Complaint that the joining Defendants
5 themselves did not care to point out through substantive briefing.

6   IT IS THEREFORE ORDERED that Simon White's Motion to Dismiss (Doc. # 71)
7 is GRANTED.

8   IT IS FURTHER ORDERED that Counts I, III, and IV are dismissed from the
9 Complaint against Defendant Simon White without prejudice and with leave to amend by
10 July 16, 2007.

11   IT IS FURTHER ORDERED that the proposed Joinder in Defendant Simon White's
12 Motion to Dismiss (Doc. # 77) is DENIED.

13   DATED this 2nd day of July, 2007.

_____
Neil V. Wake
United States District Judge